PER CURIAM.
Pursuant to rule 1-12.1(f) of the Rules Regulating The Florida Bar, fifty or more active members of The Florida Bar, on behalf of the Florida Bar Foundation (“Foundation”), petition the Court to amend rule 5-l.l(e) of the Rules Regulating The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.
Rule 5-l.l(e) deals with the Interest on Trust Accounts (“IOTA”) Program and requires that all nominal or short term funds that are placed in trust with a member of The Florida Bar practicing within the state of Florida be deposited into an interest-bearing trust account for the benefit of the Foundation. Under the IOTA program, the interest generated on trust accounts is used to fund programs that are designed to improve the administration of justice or to expand the delivery of legal services to the poor.
The petition was authorized by the Board of Directors of the Foundation as the administrator of the IOTA Program. The Foundation states that the purpose of the amendment is to increase IOTA revenues by broadening the types of institutions that may participate in IOTA. The current rule permits only banks or authorized savings and loan associations to participate in IOTA, see R. Regulating Fla. Bar 5-1.1(e)(3). Under the proposed amendment, investment companies will be allowed to qualify as eligible institutions in which IOTA accounts may be established.
The amendment further allows the use of government money market funds for IOTA funds; however, only money market funds that are registered with the Securities and Exchange Commission, and are comprised solely of United States Government Securities, are proposed for use in the IOTA program. Further, only those money market funds with a total asset value of at least $250 million would be eligible to participate.
Finally, the amendment defines institutions that are eligible to hold IOTA accounts as only those institutions which pay IOTA account depositors the highest interest rate or dividend generally available at their own institution to non-IOTA customers when IOTA accounts meet the same minimum balance or other requirements. According to the Foundation, the purpose of this portion of the amendment is to secure fair treatment of IOTA accounts so that financial institutions do not discriminate against IOTA accounts when the allowable interest rate is calculated. Essentially, all the Foundation asks is that IOTA accounts be placed in parity with non-IOTA accounts within each financial institution. The Foundation recognizes, however, that the interest rates offered are not based on account balance alone.
If the amendment is approved, the Foundation proposes that it should be charged with the responsibility of determining the initial and continuing eligibility of banks, savings and loan associations and investment companies to hold IOTA accounts. We conclude that such a charge is consistent with the Foundation’s charter. See Fla. Bar Found. Charter, art. 2.5(c) (stating that Foundation serves as manag *553 er and administrator of the IOTA program).
The Foundation requests that the proposed amendment be made effective thirty days after this Court’s order. However, the Foundation asks that those institutions currently holding IOTA accounts be provided a reasonable period of time during which to comply with the new eligibility requirements. The Foundation suggests a six-month time period for compliance.
The proposed amendments were published for comment in the February 15, 2001, edition of The Florida Bar News and modifications were published in the April 15, 2001, edition of the News. The comments received were provided to the Board of Governors of The Florida Bar, which approved the amendments unanimously on March 30, 2001. After the Foundation filed its petition with this Court, three further comments were filed, including one from the Florida Bankers Association (“FBA”).
After reviewing the petition and comments regarding the proposed amendment and hearing oral argument from the parties, we conclude that rule 5-l.l(e) should be amended. Not only does this amendment have the unanimous endorsement of the Board of Governors, but nearly all of the comments received have been overwhelmingly in favor of the purpose behind the amendments. However, in light of the concerns expressed in the comment of the FBA that the rule be clarified to reflect the intent that there be interest parity between IOTA accounts and non-IOTA accounts held in the same financial institution, we adopt the FBA’s suggested revisions to proposed subdivision (e)(5)(A) and add proposed subdivision (B) to the rule. The Foundation has indicated it has no objection to the FBA’s suggested revisions. We thank the FBA for its assistance, cooperation and constructive suggestions.
Accordingly, we approve the petition and amend rule 5-l.l(e) as reflected in the Appendix to this opinion.[1] Underscoring indicates new language; strike-through type indicates deletions. In accord with the Foundation’s request, the proposed amendment shall be made effective thirty days after the date of this opinion. However, those institutions currently holding IOTA accounts that elect to participate in IOTA under the new rule shall be provided six months to comply with the new eligibility requirements. The Foundation shall be charged with the responsibility of determining the initial and continuing eligibility of banks, savings and loan associations and investment companies to hold IOTA accounts in accordance with the criteria set forth in the rule.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
APPENDIX
Rule 5-1.1. Trust Accounts
(e) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used herein, the term:
(A) “nominal or short term” describes funds of a client or third person that, pursuant to subdivision (73), below, the lawyer has determined cannot practicably be placed at interest invested for the benefit of the client or third person;
*554 (B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IOTA account” means an interest or dividend-bearing trust account described in-■■subdiv-ision-(-g-), below bene-fitting The Florida Bar Foundation established in an eligible institution for the deposit of nominal or short-term funds of clients or third persons;
(D) ^Dally — F-inancial Institution Repurchase^Agreement” means an overnight investment -of-IOTA — funds described — in subdivision (4), below, in a financial institution eligible to enter into' a Daily Repurchase Agreement described-in-subdivision (g),.below— (g-)“Eligible Financial Institutions” An IOTA Account shall be^ established-wife means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below. The funds-covered by this rule shall be- subject -to ■ -withdrawal — upon—request and without delay. A daily financial institution — repurchase—agreement,—described-in-subdivision-(-l-)(D)j.above--may rial institution which is deemed to be “well capitalized” or “adequately-capitalized” as regulations.
(E) “Interest or dividend-bearing trust account” means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund. A daily financial institution repurchase agreement must be fully collateral-ized by, and an open-end money market fund must consist solely of, United States Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be “well capitalized” or “adequately capitalized” as defined by applicable federal statutes and regulations. An open-end money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940, and have total assets of at least $250,000,000. The funds covered by this rule shall be subject to withdrawal upon request and without delay.
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shall be deposited into one or more interest-bearing trust ■ checking IOTA accounts in.an eligibie-financial-inst-itution-for the benefit of-the-Foundation, except as provided in rule 4 1.15 with respect to funds maintained other than in a bank account, or as provided in rule 5 1.2(a). Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of this rule.
(7)(3) Determination of Nominal or Short Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
*555 (A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements and/or service charges or fees imposed by the eligible financial institution.
The determination of whether a chent’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
{6X4) Notice to Foundation. Lawyers or law firms shall advise the Foundation, at Post Office Box 1553, Orlando, Florida 32802-9QÍQ1553, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the financial eligible institution; the name of the lawyer or law firm on the IOTA account; the financial eligible institution name; the financial eligible institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account. -Lawyers or law firms shall provide to the Foundation-advance notice of their intent-to-establish-a daily — financial—institution—repurchase agreement: — Such -advance notice shall in-
elude: — the IOTA account number; — the ■name of the lawyer-or-law firm on the IOTA account; — the-financial institution name; — and the financial institution address.
(4)-Interest Rates. — The-rate of interest on funds covered by this rule ■ shall not be less than the rate paid by the financial institution-on -funds of non-IOTA account depositors. — Higher rates offered-by the ■financial institution to customers whose deposits exceed certain time or quantity minimums may be obtained-by a lawyer or law firm for IOTA accounts on some or all of the-de-posited- funds through use of eligible financial — institution—daily—repurchase agreements-in which the underlying-security-consists solely of direct obligations of the-United States Government- or agency thereof-so-long as there is no impairment of the right-to-immediately withdraw or transfer principal.
{5-)-Remlttance Instructions. — Lawyers or-law firms shall direct the financial institution; Eligible Institution Participation in IOTA. Participation in the IOTA program is voluntary for banks, savings and loan associations, and investment companies. Institutions that choose to offer and maintain IOTA accounts must meet the following requirements:
(A) Interest Rates and Dividends. Eligible institutions shall maintain IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.
(B) Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA *556 account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do no discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.
(C) Remittance and Reporting Instructions. Eligible institutions shall:
(A)(i) to calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the financial institution’s standard practice for non-IOTA account depositors customers, less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the Foundation;
(B)(ii) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm’s IOTA ■trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and
(Q(iii) to transmit to the depositing lawyer or law firm, for each remittance, a repor-t statement showing the amount of interest or dividend paid to the Foundation, the rate of interest applied, and the period for which the report statement is made.
(g)(6) Small Fund Amounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable financial eligible institution service charges or fees.
(9)(7) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of this rule.

. Because the remainder of rule 5-1.1 remains unchanged, we have elected only to publish the subdivision being amended.